IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EDWIN PASCUA CARAANG and EDNA GOROSPE CARAANG,<br><br>          Plaintiffs,<br><br>     vs.<br><br>PNC MORTGAGE, ETC., ET AL.,<br><br>          Defendants.<br>_____ ) | CIVIL NO. 10-00594 LEK-BMK |

**ORDER GRANTING IN PART AND DENYING IN PART
PNC DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Defendants PNC Mortgage, a division of PNC Bank,
National Association; PNC Bank, National Association in its
individual capacity and as successor by merger to National City
Mortgage Inc., and National City Bank; and PNC Financial Services
Group, Inc. (collectively "PNC Defendants"), filed the instant
Motion to Dismiss Complaint ("Motion") on February 25, 2011.
Plaintiffs Edwin Pascua Caraang and Edna Gorospe Caraang
(collectively "Plaintiffs") filed their Opposition to the Motion
("Memorandum in Opposition") on April 12, 2011, and the PNC
Defendants filed their reply on April 19, 2011.  This matter came
on for hearing on May 23, 2011.  Appearing on behalf of the PNC
Defendants was David Rosen, Esq., and appearing on behalf of
Plaintiffs was James Fosbinder, Esq.  Later that day, the PNC
Defendants filed their Submission of Supplemental Authority in
support of the Motion ("Supplement").  After careful

consideration of the Motion, supporting and opposing documents, and the arguments of counsel, the PNC Defendants' Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

## BACKGROUND

Plaintiffs filed the instant action on October 12, 2010 against Defendants PNC Mortgage, PNC Bank, N.A., PNC Financial Services Group, Inc., National City Mortgage, National City Bank, and E*Trade Bank (collectively "Defendants").

The Complaint alleges that, on or about May 27, 2007, Plaintiffs entered into a loan transaction to refinance their property located at 255 Aliiolani Street, Makawao, Hawaii 96768 ("the Property"). [Complaint at ¶¶ 1, 17.] Plaintiffs executed a promissory note in the principal amount of $1,400,000 ("the Note"), secured by a mortgage on the Property ("the Mortgage"). Plaintiffs also executed a second promissory note and mortgage. Although it is not entirely clear from the Complaint, it appears that Plaintiffs' allegations in this case relate to the $1,400,000 loan and not the second loan. [Id. at ¶ 17.] Plaintiffs state that they followed all directions and submitted all documents that Defendants National City Mortgage and National City Bank, N.A. (collectively "National City") requested. Plaintiffs claim that, because Defendants, and/or their predecessors in interest, failed to provide Plaintiffs with the

necessary documents and failed to make the required disclosures, Plaintiffs could not make a fully informed decision and were lured into a loan which resulted in a financial benefit to National City, and/or its successors in interest, and a financial detriment to Plaintiffs and which substantially increased Plaintiffs' likelihood of default.  [Id. at ¶¶ 19-20.]

Plaintiffs allege that: they were not provided with a signed and dated copy of their loan application; they were not provided with an initial truth-in-lending statement or a good faith estimate within three days of their application; they were not timely provided with other legally required notices, such as a final truth-in-lending disclosure, a HUD settlement statement, or a notification of their consumer rights; National City did not inform them that it was treating Plaintiffs' application as a subprime loan, did not inform them about what assets and income National City was qualifying them based upon, and did not inform them that this was inconsistent with underwriting guidelines and would increase Plaintiffs' likelihood of default; and Defendants' predecessors in interest did not disclose the true terms of the loan.  Plaintiffs claim that they did not understand the terms of the proposed loan because of Defendants' failure to make these disclosures, and they were not able to compare the terms of the proposed loan with the terms of loans that other lenders offered. [Id. at ¶¶ 21-25.]

Plaintiffs argue that Defendants targeted persons who were not financially sophisticated, or were otherwise vulnerable to abusive practices, and offered them unduly expensive credit. Plaintiffs allege that National City approved their loan based on a no-income, no-asset product based on the value of the Property, and National City did not consider Plaintiffs' ability to make payments on the loan. [Id. at ¶¶ 27-28.] Plaintiffs also argue that Defendants: 1) failed to inform them that Defendants intended to securitize and sell all or parts of their Note and/or Mortgage to other lenders and loan servicers; 2) failed to inform them that Defendants would disclose confidential information to other lenders or investors who sought to purchase bundled loans; and 3) failed to provide Plaintiffs with the required opt-out notice. [Id. at ¶¶ 35-36.] Plaintiffs allege that Defendants knew or should have known about National City's acts and omissions and therefore National City's acts and omissions are imputed to all Defendants. [Id. at ¶ 37.]

After Plaintiffs experienced "loan distress", they sought to modify and/or refinance their loan. [Id. at ¶ 39.] Defendants refused and allegedly did not deal with Plaintiffs in good faith. [Id. at ¶ 40.]

Plaintiffs claim that, during the life of the loan, Defendants, and/or their predecessors in interest, sold and/or transferred the Note and Mortgage without proper endorsements or

assignments, causing a break in the chain of title, and without disclosing to Plaintiffs all business affiliations. Plaintiffs therefore allege that Defendants, and/or their predecessors in interest, did not have the right to foreclose upon the Property. [Id. at ¶¶ 44, 48.] Further, Defendants, and/or their predecessors in interest, failed to provide Plaintiffs with timely notice of the foreclosure, rendering the foreclosure and sale void. [Id. at ¶ 46.] Plaintiffs also allege that Defendants PNC Mortgage and/or PNC Bank, N.A. ("PNC Bank") had no authority to enforce the Mortgage and Note against Plaintiffs because they were not in possession of the original Note. [Id. at ¶ 49.]

Plaintiffs claim that, because of the foregoing violations of federal and state law, Defendants cannot file or conduct ejectment proceedings against them. In the alternative, Plaintiffs allege that their defenses, claims, and various rights of action preclude Defendants from filing or conducting ejectment proceedings against them. [Id. at ¶¶ 50-51.]

Plaintiffs assert the following claims: Count I - violation of the Home Ownership Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639 *et seq.*; Count II - violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*; Count III - violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1605 *et seq.*, and Regulation Z, § 226.4; Count IV -

fraudulent misrepresentation; Count V - breach of fiduciary duty;
Count VI - unjust enrichment; Count VII - civil conspiracy; Count
VIII - complaint to quiet title; Count IX - violation of Hawaii
Bureau of Conveyances ("BOC") regulations; Count X - mistake;
Count XI - unconscionability; Count XII - unfair and deceptive
acts or practices ("UDAP"), in violation of Haw. Rev. Stat. §
480-2 and § 481A-3; Count XIII - failure to act in good faith;
Count XIV - recoupment; Count XV - negligent and/or intentional
infliction of emotional distress; Count XVI - violation of
Hawai`i foreclosure law, Haw. Rev. Stat. Chapter 667; Count XVII
- violation of the Fair Debt Collection Practices Act ("FDCPA"),
15 U.S.C. §§ 1692-1692p, as amended; Count XVIII - violation of
the Sherman Antitrust Act, 15 U.S.C. § 2; and Count IXX[1] -
violation of Hawai`i antitrust/antimonopoly acts.

Plaintiffs seek the following: a judgment of
rescission; statutory damages; actual damages; treble damages;
punitive damages; a temporary restraining order or injunctive
relief; a judgment of recoupment, reimbursement and/or
indemnification; and any other appropriate relief.

## I.   **Motion**

In the instant Motion, the PNC Defendants first note
that Plaintiffs do not deny that they defaulted on their loan
obligations, and Plaintiffs did not provide basic information

---

[1] Although nineteen is XIX, Plaintiffs use "IXX".

about the loan or attach the relevant documents.  The PNC

Defendants argue that the Court should consider the documents

which are crucial to the Complaint, and the PNC Defendants argue

that this would not convert the Motion to a motion for summary

judgment.  [Mem. in Supp. of Motion at 3 (citations omitted)).]

The PNC Defendants therefore filed a Request for

Judicial Notice ("RJN") on February 25, 2011.  The PNC Defendants

ask the Court to take judicial notice of the following documents:

- Exh. A - the May 16, 2007 Note referred to *supra*, which
  Plaintiffs executed in favor of National City Mortgage
  ("NCM"), a division of National City Bank ("NCB");
- Exh. B - the May 16, 2007 Mortgage referred to *supra*, which
  Plaintiffs executed in favor of NCM, and which was recorded
  with the Land Court on May 24, 2007, as Document No. 3606310
  on Cert. 708,801;
- Exh. C - the Land Court Petition for Order Re: Change of
  Name/Merger reflecting that NCM was merged with and into NCB
  on October 1, 2008 ("NCM Land Court Petition"), recorded
  with the Land Court on February 9, 2009, as LCO 177781;
- Exh. D - the Land Court Petition for Order Re: Change of Name
  reflecting that NCB was merged with and into PNC Bank on
  November 6, 2009 ("PNC Land Court Petition"), recorded with
  the Land Court on December 23, 2009, as LCO 181315;
- Exh. E - the PNC Bank Certificate dated November 6, 2009, as
  further evidence of the merger of NCB with and into PNC;
- Exh. F - PNC Bank's Notice of Mortgagee's Intention to Foreclose
  Under Power of Sale ("NOI"), recorded in the BOC on April
  19, 2010 as 2010-052781;
- Exh. G - PNC Bank's Mortgagee's Affidavit of Foreclosure Under
  Power of Sale ("Affidavit of Sale"), reflecting that the
  Property was sold at public auction on June 21, 2010,
  recorded with the Land Court on July 2, 2010, as Document
  No. 3976237 on Cert. 708,801; and
- Exh. H - the Mortgagee's Quitclaim Deed Pursuant to Power of
  Sale ("Deed"), reflecting that the current owner of the
  Property is PNC Bank, National Association, recorded with
  the Land Court on August 11, 2010, as Document No. 3988114
  on Cert. 708,801.  The Deed resulted in the issuance of a
  new certificate of title - TCT 992,051.

The PNC Defendants ask the Court to take judicial notice of

Exhibits B-D and F-H pursuant to Fed. R. Evid. 201 because those

documents are public records.  The PNC Defendants ask the Court

to take judicial notice and/or to consider Exhibit A, the Note,

because it is central to the allegations in the Complaint and the

authenticity of the document is not in dispute.

###    A.    Counts I (HOEPA), II (RESPA) & III (TILA)

The PNC Defendants argue that Counts I, II, and III

fail to state a claim under HOEPA, TILA, or RESPA because

Plaintiffs signed the Note and Mortgage on May 16, 2007,

rendering those claims time-barred.  In the alternative, the PNC

Defendants argue that Plaintiffs' right of rescission expired on

the sale of the Property.  Even if Plaintiffs' claims were not

time-barred and did not expire with the sale of the Property,

Plaintiffs no longer have the right to challenge the completed

non-judicial foreclosure because the Property is registered with

the Land Court and the new certificate of title has been issued.

Plaintiffs' RESPA claim, alleging violation of 12

U.S.C. § 2607, is also subject to a one year statute of

limitations.  Plaintiffs failed to bring their claim within one-

year of completing their loan.  The PNC Defendants urge the Court

to dismiss these claims with prejudice.

###    B.    Count IV - Fraudulent Misrepresentation

The PNC Defendants note that Fed. R. Civ. P. 9(b)

requires a party pleading fraud to state the circumstances constituting fraud with particularity as to each defendant. Plaintiffs list the alleged fraudulent conduct in paragraph 80 of the Complaint, but Plaintiffs fail to specify which defendants allegedly participated in which fraudulent actions. Plaintiffs do not even allege the time, place, or specific content of the allegedly fraudulent misrepresentations, and Plaintiffs do not attribute any fraudulent actions specifically to the PNC Defendants. Plaintiffs merely state the elements of a fraud claim and make conclusory allegations. The PNC Defendants argue that these are legal conclusions that are not entitled to a presumption of truth in a motion to dismiss. The PNC Defendants therefore urge the Court to dismiss Count IV.

### C. **Count V - Breach of Fiduciary Duty**

The PNC Defendants argue that Plaintiffs have failed to state a claim for breach of fiduciary duty because, as a general rule, a borrower-lender relationship is not a fiduciary relationship absent special circumstances. Plaintiffs' allegation that they were unsophisticated parties who placed their trust and confidence in the PNC Defendants is not enough to overcome that general rule.

### D. **Count VI - Unjust Enrichment**

The PNC Defendants first assert that the express contracts between Plaintiffs and the PNC Defendants, the Note and

Mortgage, preclude an unjust enrichment claim. Plaintiffs do not dispute the validity of those contracts, and they have not alleged that another implied contract exists. Moreover, they do not allege what benefits the PNC Defendants allegedly received from the implied contract. The PNC Defendants therefore urge the Court to dismiss Count VI.

### E. Count VII - Civil Conspiracy

The PNC Defendants emphasize that a civil conspiracy claim must have an underlying tort as its basis. If there is no underlying tort, the court must dismiss the conspiracy claim. Insofar as the PNC Defendants argue that none of Plaintiffs' tort claims should survive dismissal, the PNC Defendants argue that the civil conspiracy claim also fails to state a claim.

### F. Count VIII - Quiet Title

The PNC Defendants argue that this claim is simply a request for injunctive relief, not a separate cause of action. Plaintiffs have not alleged any claim that would entitle them to have title to the Property vested in them. Plaintiffs' TILA rescission claim is time-barred; Plaintiffs have not tendered the amount of the loan, which is required for rescission; Plaintiffs have not shown that they can tender the amount; and PNC Bank now owns the Property pursuant to a new certificate of title. Plaintiffs' claim for injunctive relief fails because it is not an independent claim and there is no other claim that would

render Plaintiffs entitled to the relief they seek.

### G.   Count IX - Violation of BOC Regulations

The PNC Defendants first assert that there is no legal authority supporting a private right of action in connection with these regulations.   The PNC Defendants argue that, if Plaintiffs suggest that PNC Bank was required to file an assignment with respect to every mortgage that NCM held before the merger, such a claim is unreasonable.   The NCM Land Court Petition recorded the merger of NCM to NCB, and the PNC Land Court Petition recorded the merger of NCB to PNC Bank.   Neither of these transactions constituted a sale of Plaintiffs' Note and Mortgage.   The PNC Defendants therefore urge the Court to dismiss Count IX.

### H.   Count X - Mistake

Count X seeks rescission of the Note based on a theory of mistake.   Plaintiffs do not allege any facts supporting a mistake as to the PNC Defendants, and Plaintiffs did not even allege the elements of a mistake claim.   Plaintiffs' conclusory allegation that the parties entered into the loan based upon mutual mistake, [Complaint at ¶ 119,] is not sufficient to survive a motion to dismiss.   Plaintiffs have therefore failed to state a claim based on mistake and, as discussed *supra*, any claim for rescission is time-barred and/or expired because of the sale of the Property.   The PNC Defendants therefore urge the Court to dismiss Count X.

## I.  <u>Count XI - Unconscionability</u>

The PNC Defendants argue that this claim fails because unconscionability is a defense to a contract claim; it is not an affirmative claim for relief.  Even if Plaintiffs could bring a claim for unconscionability, they have failed to allege any facts to support such a claim against the PNC Defendants.  Plaintiffs merely make general, conclusory statements that Defendants held superior bargaining power over them and that Plaintiffs did not understand the terms of the loan.  The PNC Defendants argue that this is not enough to survive a motion to dismiss.

## J.  <u>Count XII - UDAP</u>

Plaintiffs list the acts that allegedly violated Haw. Rev. Stat. §§ 480-2(a) and/or 481A-3 in paragraph 129 of the Complaint.  Plaintiffs also allege that the PNC Defendants' TILA violations constitute UDAP violations under § 480-2(a) and/or § 481A-3.  [Complaint at ¶ 130.]  Plaintiffs have not alleged any specific acts that the PNC Defendants committed in violation of those statutes.  In addition, insofar as Plaintiffs' UDAP claim is based upon their TILA allegations, the PNC Defendants contend that the UDAP claim fails for the reasons discussed above, and because federal law preempts a state law claim based on a TILA violation.  The PNC Defendants therefore urge the Court to dismiss Plaintiffs' UDAP claim.

**K.**   **Count XIII - Failure to Act in Good Faith**

The PNC Defendants argue that Count XIII fails to state a claim because, under Hawai`i law, breach of the implied covenant of good faith and fair dealing is not an independent cause of action.  Further, even if Plaintiffs could bring such a claim, the PNC Defendants argue that it fails because Plaintiffs are merely trying to allege a fraudulent misrepresentation claim masked as a breach of contract claim.  The PNC Defendants reiterate that Plaintiffs have failed to plead fraudulent misrepresentation with the required particularity.

**L.**   **Count XIV - Recoupment**

The PNC Defendants argue that recoupment is not an affirmative claim; it is a defense that can be raised to reduce, diminish, or defeat a plaintiff's claims.  Similarly, TILA also permits recoupment as a defense, but a court should dismiss a recoupment claim where there is no evidence that the defendants initiated a proceeding against the plaintiff.  Even if Plaintiffs could bring a recoupment claim, Plaintiffs have failed to allege any basis that would entitle them to relief.  The PNC Defendants therefore urge the Court to dismiss Count XIV.

**M.**   **Count XV - Intentional and/or Negligent**
        **Infliction of Emotional Distress**

The PNC Defendants argue that Plaintiffs' negligent infliction of emotional distress ("NIED") claim fails because

Plaintiffs cannot establish a negligence claim against the PNC Defendants. Plaintiffs have failed to allege that the PNC Defendants owed them a duty and that the PNC Defendants breached that duty. Even assuming, *arguendo*, that Plaintiffs have suffered injuries, they have not alleged how the PNC Defendants caused those injuries. Further, the statute of limitations for tort claims is two years, pursuant to Haw. Rev. Stat. § 657-7. Plaintiffs failed to bring this action within two years after they entered into the loan, which is when the alleged injuries occurred. The PNC Defendants therefore argue that Plaintiffs' NIED claim is time-barred.

As to Plaintiffs' intentional infliction of emotional distress ("IIED") claim, the PNC Defendants argue that Plaintiffs have not alleged any extreme and outrageous conduct by the PNC Defendants. Even if Plaintiffs have suffered emotional distress, they have not alleged how the PNC Defendants caused that distress. Further, the IIED claim is also time-barred.

**N.    Count XVI - Haw. Rev. Stat. Chapter 667**

Count XVI alleges that the foreclosure on the Property was invalid because the PNC Defendants committed various violations of Haw. Rev. Stat. Chapter 667. [Complaint at ¶¶ 152-53.] The PNC Defendants argue that they had the right to foreclose on the Property because the merger of NCM into PNC Bank rendered PNC Bank the party in interest under the Note and

Mortgage with the right to foreclose on the Property. Further, the NOI establishes that PNC Bank was represented by Derek Wong, Esq., a Hawai`i attorney, in the foreclosure. The affidavit in the NOI establishes that PNC Bank: properly notified Plaintiffs about the foreclosure; posted notice on the Property; and published the NOI in the Honolulu Star Advertiser. [Mem. in Supp. of Motion at 30-32.] Plaintiffs also make a conclusory allegation that the NOI was illegal and required conditions beyond those established by law. The PNC Defendants argue that this allegation is conclusory and is not supported by any facts. Finally, because the Property is registered in the Land Court and a new certificate of title has been issued, any defenses that Plaintiffs may have had to the non-judicial foreclosure sale are time-barred. The PNC Defendants therefore urge the Court to dismiss Count XVI.

      **O.**   **Count XVII - FDCPA**

      The PNC Defendants argue that Count XVII fails because the FDCPA only applies to "debt collectors" and creditors and loan servicers are not included in that class. Plaintiffs have not alleged that the PNC Defendants are seeking to collect a debt or that it used any improper or abusive methods to collect that debt. Further, this district court has ruled that a lender pursuing a non-judicial foreclosure is not attempting to collect a debt for purposes of the FDCPA. The PNC Defendants therefore

urge the Court to dismiss Count XVII.

**P.    Count XVIII and IXX - Antitrust Claims**

The PNC Defendants argue that Plaintiffs' federal and
state antitrust claims cannot survive a motion to dismiss.
Plaintiffs make conclusory and unsupported allegations that the
PNC Defendants engaged in predatory conduct or anticompetitive
conduct in an attempt to monopolize the mortgage lending and
servicing market.  Plaintiffs allege that this created the
collapse of the subprime mortgage market, leading to economic
collapse.  The alleged wrongful conduct in the course of the PNC
Defendants' dealings with Plaintiffs provides only the weakest
support for these antitrust claims.  The PNC Defendants therefore
urge the Court to dismiss Counts XVIII and IXX.

In conclusion, the PNC Defendants argue that the Court
should dismiss all of Plaintiffs' claims with prejudice.

**II.   Memorandum in Opposition**[2]

In their Memorandum in Opposition, Plaintiffs state
that they purchased the Property as a vacant lot in 2001 and
built their "family dream home" on it, completing work in

---

[2] Plaintiffs filed a First Amended Complaint on April 1,
2011.  This Court struck the amended complaint because Plaintiffs
failed to comply with Fed. R. Civ. P. 15(a) and informed
Plaintiffs that the Court would not construe the attempt to amend
the Complaint as their opposition to the Motion.  The Court
continued the hearing on the Motion and gave Plaintiffs
additional time to respond to the Motion.  [Order Regarding
Pltfs.' First Amended Complaint & Defs.' Motion to Dismiss
Complaint, filed 4/5/11 (dkt. no. 25).]

approximately 2005. [Mem. in Opp. at 5.] In May 2007, the
Property was appraised at $2,550,000, and Plaintiffs had existing
mortgages of "slightly in excess of $1 million" and therefore had
approximately $1.5 million in equity when they sought a
refinancing loan from NCM.[3] [Id. at 5-6, Exh. 1 (appraisal
report dated May 9, 2007).] Plaintiffs agree that the Court may
consider extrinsic documents that are central to their claims, if
the authenticity of the documents is not challenged. [Mem. in
Opp. at 6 n.1 (citing cases).]

NCM allegedly assigned the Note and Mortgage to
Defendant E*Trade Bank ("E*Trade") by an Assignment of Mortgage
dated December 31, 2008, recorded with the Land Court on
January 15, 2009 as document number 3819282 on certificate of
title number 708,801. [Mem. in Opp., Exh. 3.] Plaintiffs state
that the only notice that they received about the transfer of the
servicing rights for the Note and Mortgage was an October 1, 2009
letter stating that, as of November 11, 2009, the servicing would
be transferred from NCM, a division of NCB, to PNC Mortgage, a
division of PNC Bank. [Mem. in Opp. at 7-8.] E*Trade allegedly
assigned the Note and Mortgage to PNC Bank on March 10, 2010. An

---

[3] Simultaneous with the Note and Mortgage at issue in this
case, Plaintiffs also executed a second promissory note regarding
a $350,000 home equity line of credit, which was secured by a
second mortgage. NCM, a division of NCB, was also the lender on
that loan. That mortgage was recorded with the Land Court on May
24, 2007 as document number 3606311 on certificate of title
number 708,801. [Mem. in Opp. at 7.]

Assignment of Mortgage was recorded with the Land Court on
April 19, 2010 as document number 3956475 on certificate of title
number 708,801. [Mem. in Opp., Exh. 4.] Plaintiffs state that,
when PNC Bank acquired the Note and Mortgage, Plaintiffs were
already in default. [Mem. in Opp. at 8.]

In 2009, Plaintiff Edwin Caraang's ("Mr. Caraang")
business experienced economic distress, and he became unable to
draw a paycheck from his business. Through an entity called
Nationwide Home Savers, Mr. Caraang attempted to apply for a loan
modification for both mortgages on the Property with NCM.
Plaintiffs state that, at this time, they were unaware of the
assignment to E*Trade. After counsel for Nationwide Home Savers
submitted Plaintiffs' information, Plaintiffs began receiving
conflicting correspondence from NCM. Plaintiffs allege that
Defendants intentionally delayed and confused the process so that
Plaintiffs would not be able to rescind the mortgage contract or
take other legal action on a timely basis to prevent the
foreclosure auction of the Property. Further, now that
Plaintiffs have become aware of the assignment to E*Trade,
Plaintiffs believe that neither NCM nor the PNC Defendants had
the authority to negotiate a loan modification with Plaintiffs
because E*Trade purportedly owned the Note and Mortgage from
December 31, 2008 to March 10, 2010. [Id. at 8-10.]

PNC representatives made various statements to

Plaintiffs about their loan modification application which led
them to believe they were on track to receive a loan
modification.  Plaintiffs state that the PNC Defendants lost or
misfiled documents throughout the process, requiring Plaintiffs
to resubmit them numerous times.  According to Plaintiffs, the
PNC negotiator assigned to their application went on vacation,
but did not leave instructions to postpone the foreclosure
auction.  The auction went forward on June 21, 2010, and the PNC
Defendants acquired the Property for $695,000.  Plaintiffs state
that the assessed value of the Property according to 2010-2011
Maui County Property Tax Department assessments was $1,875,000.
[Id. at 11 (citing Exh. 5, Exh. 6 at 3(d)).]  Plaintiffs argue
that the PNC Defendants failed to properly advertise the auction
because the PNC Defendants only advertised it in the Honolulu
Star Advertiser, instead of in a Maui newspaper.  Plaintiffs also
claim that Defendants concealed the date of the auction from them
by leading them to believe that the auction would be postponed in
light of the loan modification process, which was nearly
complete.

        Plaintiffs also assert that Defendants have not
established that the PNC Defendants obtained the Note and
Mortgage through a valid assignment.  Plaintiffs contend that the
copy of the Note which the PNC Defendants submitted with the
Motion is not properly endorsed and Defendants have not produced

19

a properly endorsed version to Plaintiffs.  Plaintiffs therefore argue that the PNC Defendants did not have the proper authority to foreclose, and they ask for leave to include such allegations in an amended complaint.

Plaintiffs state that, as to Counts I-V, VII-XI, XIV, and XVI, they submit those claims on the pleadings.  Plaintiffs acknowledge that the Court may be inclined to dismiss those claims based on the amount of time that has passed since the alleged acts occurred.  Plaintiffs, however, feel that the claims are valid and that the Court should either deny the Motion as to those claims or allow amendment of those claims.  [Id. at 24-25.]

Plaintiffs argue that Counts VI, XII, XIII, XV, XVII, XVIII, and IXX are interrelated and adequately supported in the Complaint.  They state that they are prepared to file an amended complaint with additional information to support these claims. [Id. at 12, Exh. 7 (proposed First Amended Complaint).]

## A.  **Counts VI, XII, and XIII**

Plaintiffs discuss Count XII, alleging UDAP violations, together with Count VI, unjust enrichment.  Plaintiffs contend that the PNC Defendants were unjustly enriched when they acquired the Property.  According to Plaintiffs, National City and the PNC Defendants intentionally delayed, and ultimately discontinued, the loan modification process.  National City and the PNC Defendants knew that Plaintiffs were able to pay the arrearage on

the loan through a family loan or otherwise, but National City and the PNC Defendants went forward with the foreclosure auction, even though the modification process was almost complete. Plaintiffs also claim that National City and the PNC Defendants misrepresented the amount of time that the loan modification process would take and falsely represented to Plaintiffs that the auction would not occur as long as the loan modification application was under review. The PNC Defendants did not inform Plaintiffs that their application had been denied until after the auction had taken place. Plaintiffs emphasize that they complied with all loan modification requirements in good faith, even though it now appears that National City and the PNC Defendants did not have the authority to negotiate a modification of Plaintiffs' loan at that time. Plaintiffs also allege that the PNC Defendants did not properly advertise the auction. Plaintiffs therefore contend that the auction has wrongfully resulted in "a windfall of equity in the Property that rightfully belongs to the Plaintiffs[.]" [Id. at 18-19.] Plaintiffs assert that National City's and the PNC Defendants' unfair and deceptive practices have caused Plaintiffs considerable hardship and have offended public policy concerns.

Plaintiffs do not specifically address Count XIII, failure to act in good faith, but it appears that the same legal arguments that Plaintiffs raised in defense of Counts VI and XII

also apply to Plaintiffs' position regarding Count XIII.

**B.   Count XV**

As to Count XV, NIED and/or IIED, Plaintiffs argue that courts have found that debt collection can give rise to emotional distress claims if the debt collectors used outrageous methods. Plaintiffs assert that Defendants' false representations, failure to act in good faith, and violations of the UDAP and FDCPA statutes support an IIED or NIED claim.  Defendants knew or should have known that their conduct would cause Plaintiffs to lose their home and become homeless, resulting in Plaintiffs' severe emotional distress.  Plaintiffs therefore argue that Defendants' actions were extreme and outrageous.  Plaintiffs state that they have suffered depression, anxiety, and bouts of crying.  Plaintiffs assert that their Complaint satisfies most of the elements of the IIED/NIED claim and that the Court should allow them to correct any deficiencies through amendment.

**C.   Count XVII**

As to Count XVII, Plaintiffs allege that Defendants, and/or their predecessors in interest, violated the FDCPA by failing to give Plaintiffs the required notices in collecting the debt and failed to inform Plaintiffs of their right to contest or request verification of the debt.  Plaintiffs assert that the violations of the FDCPA invalidate the auction.

**D.   Counts XVIII and IXX**

As to Counts XVIII and IXX, violations of federal and state antitrust laws, Plaintiffs first note that the substantive provisions of the Sherman, Clayton, and Federal Trade Commission Acts are incorporated verbatim into Hawai`i antitrust law, and therefore the federal and state claims may be addressed together. Plaintiffs contend that Defendants are "merchants" for purposes of antitrust laws and that Plaintiffs' claims are in the public's interest. Plaintiffs allege that Defendants have a monopoly on, or have attempted to monopolize, the mortgage and/or mortgage servicing industry.

### III. PNC Defendants' Reply

In its reply, the PNC Defendants first note that Plaintiffs have failed to address the deficiencies in Counts I-V, VII-XI, XIV, and XVI. Plaintiffs have only raised new allegations about the subject loan and the foreclosure sale of the Property. The PNC Defendants argue that none of the new allegations can remedy the deficiencies in Counts I-V, VII-XI, XIV, and XVI. The PNC Defendants therefore argue that the Court should dismiss those claims with prejudice.

The PNC Defendants next argue that the Court should dismiss Counts VI, XII, and XIII with prejudice for the reasons identified in the Motion because Plaintiffs' new factual allegations do not address the deficiencies in these claims. Specifically, Plaintiffs still fail to allege who made the

alleged misrepresentations and when the alleged
misrepresentations were made.  The PNC Defendants also point out
that, even if the Court accepts Plaintiffs' argument that
advertising the auction in the Honolulu Star Advertiser and not
in the Maui News was improper, this does not cure the
deficiencies in Counts VI, XII, and XIII.

As to Plaintiffs' UDAP claim, the PNC Defendants argue
that Plaintiffs appear to concede that there was no UDAP
violation until they sought loan modification.  Moreover,
Plaintiffs have still failed to identify the specific allegations
necessary to assert a fraud claim.

As to Plaintiffs' FDCPA claim, the Memorandum in
Opposition does not contest the fact that the FDCPA only applies
to debt collectors, and the PNC Defendants are not debt
collectors, nor does the Memorandum in Opposition contest the
fact that lenders pursuing non-judicial foreclosures are not
attempting to collect debts for purposes of the FDCPA.  The PNC
Defendants therefore urge the Court to dismiss Count XVII with
prejudice.

As to Plaintiffs' antitrust claims, Plaintiffs have
still failed to make a single factual allegation that the PNC
Defendants engaged in anticompetitive behavior.  The PNC
Defendants therefore urge the Court to dismiss Counts XVIII and
IXX with prejudice.

The PNC Defendants reiterate their arguments as to Plaintiffs' NIED and IIED claim. Further, they note that default and foreclosure proceedings and the denial of loan modification generally do not rise to the level of extreme and outrageous conduct supporting an IIED claim. The PNC Defendants therefore urge the Court to dismiss Count XV with prejudice.

Finally, the PNC Defendants oppose Plaintiffs' request for leave to amend the Complaint. Plaintiffs have disregarded the Federal Rules of Civil Procedure by failing to file a motion for leave to amend and, to the extent that the Memorandum in Opposition seeks leave to amend, it only contains conclusory discussions of whether leave to amend is warranted. The PNC Defendants note that the original, nineteen-count Complaint was thirty-six pages long, but the proposed amended complaint, which only contains five counts, is forty-eight pages long. Plaintiffs do not explain what additional facts have been added or changed. The PNC Defendants also emphasize that the Property has been sold and therefore all challenges to the non-judicial foreclosure sale are time-barred because of the filing of the new certificate of tile. The PNC Defendants further argue that the Court should not give Plaintiffs leave to amend because Plaintiffs did not seek leave to amend until six months after filing the original Complaint, and Plaintiffs offer no explanation for the delay in properly alleging their claims. If the Court is inclined to

grant Plaintiffs leave to amend, the PNC Defendants assert that the Court should award the PNC Defendants their attorneys' fees and costs incurred to date as a sanction for filing the Complaint and forcing the PNC Defendants to expend a considerable amount of time and resources on the meritless Complaint.

At the hearing on the Motion, counsel for Defendants reiterated the request for sanctions, arguing that Plaintiffs' counsel did not comply with his obligations under Federal Rule of Civil Procedure 11 before filing the instant action. Defense counsel emphasized that, in other cases, Plaintiffs' counsel filed similar complaints that were also meritless.

## STANDARD

### I.    Federal Rule of Civil Procedure 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

> Under Rule 12(b)(6), review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996). However, courts may "consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

26

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 554, 127 S. Ct. 1955).

<u>Hawaii Motorsports Inv., Inc. v. Clayton Group Servs., Inc.</u>, 693 F. Supp. 2d 1192, 1195-96 (D. Hawai`i 2010).

This Court, however, notes that the tenet that the court must accept as true all of the allegations contained in the complaint – "is inapplicable to legal conclusions." <u>Iqbal</u>, 129 S. Ct. at 1949. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. <u>Id.</u> at 1950.

"Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." <u>Harris v. Amgen, Inc.</u>, 573 F.3d 728, 737 (9th Cir. 2009) (citation and quotation marks omitted).

## II. **Federal Rule of Civil Procedure 9(b)**

Fed. R. Civ. P. 9(b) requires that "[i]n alleging fraud

27

or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) requires that a party make particularized allegations of the circumstances constituting fraud. See <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550, 557-58 (9th Cir. 2010).

In order to sufficiently plead a fraud claim, the plaintiffs "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice." <u>Shroyer v. New Cingular Wireless Servs., Inc.</u>, 622 F.3d 1035, 1042 (9th Cir. 2010) (citation omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); <u>see also</u> <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 554 (9th Cir. 2007) (en banc) ("[T]he state of mind - or scienter - of the defendants may be alleged generally." (citation omitted)); <u>Walling v. Beverly Enters.</u>, 476 F.2d 393, 397 (9th Cir. 1973) (stating that Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations" (citations omitted)).

A motion to dismiss for failure to plead with particularity is "the functional equivalent of a motion to dismiss under Rule 12(b)(6)[.]" <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1107 (9th Cir. 2003). In considering a motion to dismiss, the court is not deciding whether a claimant will

ultimately prevail but rather whether the claimant is entitled to offer evidence to support the claims asserted. <u>Twombly</u>, 550 U.S. at 563 n.8 (citation omitted).

**DISCUSSION**

## I. <u>Judicial Notice</u>

This Court may take judicial notice of any fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This Court may take judicial notice at any stage of a case, and the Court must take judicial notice when a party makes a request and supplies the necessary information. Fed. R. Evid. 201(d), (f). The contents of the documents that the PNC Defendants have presented can be readily determined through public records, the accuracy of which cannot reasonably be questioned. For example, mortgage agreements are public records and therefore may be the subject of judicial notice. <u>See, e.g.</u>, <u>Duarte v. Bank of Am.</u>, Civil No. 10-00372 JMS/BMK, 2011 WL 1399127, at *1 n.1 (D. Hawai`i Apr. 12, 2011) (citation omitted). Defendants' Request for Judicial Notice is therefore GRANTED.

## II. <u>Counts I-V, VIII-XI, XIV, and XVI</u>

Plaintiffs "elect[ed] to submit on the pleadings" as to Counts I, II, III, IV, V, VII, VIII, IX, X, XI, XIV, and XVI. [Mem. in Opp. at 24-25.] Plaintiffs' Memorandum in Opposition

did not raise any arguments to rebut the PNC Defendants' position that these claims fail as a matter of law.  Plaintiffs have therefore essentially conceded these claims because the legal arguments conveyed in the Complaint do not carry the presumption of truth that the factual allegations of the Complaint are entitled to for purposes of a motion to dismiss.  See Iqbal, 129 S. Ct. at 1949.  The Court therefore will only briefly address these claims.

### A.    Count I (HOEPA) and Count III (TILA)

HOEPA is an amendment to TILA and is therefore subject to the same statute of limitations.  See Herschelman v. New Century Mortg. Corp., Cv. No. 09-00461 DAE-KSC, 2010 WL 4448224, at *4 n.3 (D. Hawai`i Oct. 29, 2010) (citation omitted).  TILA claims seeing damages are subject to a one-year statute of limitations that begins to run from the date the loan is consummated, but the doctrine of equitable tolling may extend that period.  See 15 U.S.C. § 1640(e); Cannon v. US Bank, NA, Civ. No. 11-00079 HG-BMK, 2011 WL 1637415, at *5 (D. Hawai`i Apr. 29, 2011) (citing King v. California, 784 F.2d 910, 915 (9th Cir. 1986)).  Where the borrower allegedly did not receive the required TILA disclosures, the borrower must bring his rescission claim within three years after the loan consummation.  The three-year period is a statute of repose, which is not subject to equitable tolling.  See 15 U.S.C. § 1635(f); Cannon, 2011 WL

1637415, at *6 (citing <u>Miguel v. Country Funding Corp.</u>, 309 F.3d 1161, 1164 (9th Cir. 2002) (some citations omitted)).

Plaintiffs entered into the subject loan on May 27, 2007, but did not file the instant action until October 12, 2010. Plaintiffs' HOEPA and TILA claims seeking damages based on the alleged failure to make the required disclosures associated with the closing of the loan transaction are time-barred because Plaintiffs failed to bring the claims within one year of consummating the loan and the factual allegations in the Complaint do not establish a basis for equitable tolling. Further, no amendment can cure the defects in these claims.

Count I also alleges a HOEPA claim for rescission, but this claim is also time barred because Plaintiffs failed to bring the claim within three years of consummating the loan.[4]  Further, no amendment can cure the defect in this claim.

In light of these findings, the Court need not address the remainder of PNC's arguments regarding Count I and Count III. The Court GRANTS the PNC Defendants' Motion as to Count I and Count III, and DISMISSES those claims WITH PREJUDICE.

---

[4] The Court notes that, where the borrower timely notified the lender that he was exercising his right to rescind but did not file his civil action within the three-year statute of repose, there may be an independent TILA claim for damages based on the attempt to rescind the loan. <u>Peyton v. Option One Mortg. Corp.</u>, Civil No. 10-00186 SOM/KSC, 2011 WL 1327028, at *5 (D. Hawai`i Mar. 31, 2011).  Plaintiffs' Complaint, however, does not allege such a claim, and the Court does not express an opinion as to whether Plaintiffs could allege such a claim.

**B.    Count II (RESPA)**

Plaintiffs allege that Defendants violated 12 U.S.C. § 2607 by accepting charges for real estate services that were actually charges for other services rendered and by failing to provide a special information booklet at the time of the loan application, as required by 24 C.F.R. § 3500.6.  [Complaint at ¶¶ 67-70.]

"The statute of limitations for a RESPA claim is either one or three years from the date of the violation, depending on the type of violation." Cannon, 2011 WL 1637415, at *7.  Alleged violations of § 2607 are subject to a one-year statute of limitations, 12 U.S.C. § 2614, and alleged violations of § 3500.6 are subject to a three-year statute of limitations, Badua v. Fremont Inv. & Loan, CV. No. 10-00580 DAE-BMK, 2011 WL 1526813, at *7 (D. Hawai`i Apr. 20, 2011).  Plaintiffs failed to bring their RESPA claims within the applicable limitations periods. Although equitable tolling may apply to RESPA claims, Phillips v. Bank of Am., Civil No. 10-00551 JMS-KSC, 2011 WL 240813, at *9 (D. Hawai`i Jan. 21, 2011) (citation omitted), Plaintiffs have not alleged any facts that would warrant equitable tolling. Further, no amendment can cure the defect in Plaintiffs' RESPA claims.

The PNC Defendants' Motion is therefore GRANTED as to Count II, which is DISMISSED WITH PREJUDICE.

## C. __Count IV (Fraudulent Misrepresentation)__

Plaintiffs generally allege that Defendants, and/or their predecessors in interest, intentionally concealed material information and made false representations prior to, and at the time of, closing. Plaintiffs list various omissions and misrepresentations, such as misrepresenting or concealing the terms of the loan and the declining property values, but Plaintiffs do not identify each defendant who allegedly made each omission or misrepresentation. [Complaint at ¶¶ 78-80.]

Plaintiffs' Complaint does not allege their fraudulent misrepresentation claim with the specificity required by Fed. R. Civ. P. 9(b) and the applicable case law. See, e.g., Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1042 (9th Cir. 2010) (stating that plaintiffs "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice" (citation omitted)); Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007) ("In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[] in the alleged fraudulent scheme." (alterations in original) (citation omitted)). It is arguably possible for Plaintiffs to cure the defects in this claim by amendment, if they can plead fraudulent misrepresentation by the PNC Defendants with the required specificity.

The PNC Defendants' Motion is therefore GRANTED IN PART
AND DENIED IN PART as to Count IV, which is DISMISSED WITHOUT
PREJUDICE.

### D.   **Count V (Breach of Fiduciary Duty)**

Plaintiffs' claims against the PNC Defendants for
breach of fiduciary duty fail as a matter of law because, as a
general rule, "[l]enders generally owe no fiduciary duties to
their borrowers." <u>McCarty v. GCP Mgmt., LLC</u>, Civil No. 10-00133
JMS/KSC, 2010 WL 4812763, at *5 (D. Hawai`i Nov. 17, 2010)
(citations omitted).  This district court, however, has
recognized that fiduciary duties may exist were there is a
special relationship between the borrower and the lender.  Such a
relationship "might arise where there is inequality of bargaining
power." <u>Id.</u> (citing <u>Miller v. U.S. Bank of Wash., N.A.</u>, 865 P.2d
536, 543 (Wash. App. 1994) ("A quasi-fiduciary relationship may
exist where the lender has superior knowledge and information,
the borrower lacks such knowledge or business experience, the
borrower relies on the lender' (sic) advice, and the lender knew
the borrower was relying on the advice.")).  Thus, it is arguably
possible for Plaintiffs to cure the defects in this claim by
amendment.

The PNC Defendants' Motion is therefore GRANTED IN PART
AND DENIED IN PART as to Count V, which is DISMISSED WITHOUT
PREJUDICE.

## E.  **Count IX (Violation of BOC Regulations)**

The Complaint alleges that Defendants, and/or their predecessors in interest, were required to file a special mortgage recording fee ("SMRF") for each amendment to the Mortgage which increased the principal amount of the secured debt.  Plaintiffs' Mortgage is an adjustable rate mortgage, and Plaintiffs assert that Defendants, and/or their predecessors in interest, were required to file a SMRF and an assignment of mortgage each time that the Mortgage was assigned.  Plaintiffs apparently allege that, because Defendants failed to do so, Defendants did not have the requisite title in the Property at the time of the foreclosure auction.  [Complaint at ¶¶ 110-16.]

Plaintiffs rely on Chapter 178 of the Hawai`i Administrative Rules, the Administrative Special Mortgage Recording Fee Guidelines.  [Id. at ¶ 110.]  This district court has recently rejected an identical claim in another case.

> As for Chapter 16-178 of the Hawaii Administrative
> Rules, it has not been in effect since July 1,
> 2001.  See 2001 Haw. Sess. Laws 153 § 4 ("The
> special mortgage recording fee established under
> section 431P-16 Hawaii Revised Statutes, shall be
> suspended as of July 1, 2001, and shall remain
> suspended until reactivated by the Hawaii
> hurricane relief fund's board of directors.")
> Further, this administrative rule contains no
> private right of action no (sic) does it suggest
> that any right was intended.  Indeed its
> underlying enabling statutes, Haw. Rev. Stat. §§
> 431P-5, 431P-16 state that the Hawaii Hurricane
> Relief Fund has the power to enforce the
> regulation through fines and lawsuits.  Thus, even
> if applicable, Plaintiff could not sue to enforce

it.  See Reliable Collection Agency, Ltd. v. Cole,
584 P.2d 107, 109-112 (Haw. 1978) (finding no
private right of action to enforce a statute when
statute provided for enforcement by government
agency and contained no suggestion that private
citizens could sue to enforce the statute); see
also Whitey's Boat Cruises, Inc. v. Napalm-Kauai
Boat Charters, Inc., 132 P.3d 1213, 1224 (Haw.
2006) (finding no private right of action to sue
competitor for violation of regulatory infractions
because the "regulations were not promulgated with
the objective of protecting business interests or
competition").

Franco v. Fed. Nat'l Mortg. Ass'n, CV. No. 10-00735 DAE-KSC, 2011

WL 1842970, at *7 (D. Hawai`i May 13, 2011).  For the same

reasons, Plaintiffs' Count IX fails as a matter of law and cannot

be saved by any amendment.

        The PNC Defendants' Motion is therefore GRANTED as to

Count IX, which is DISMISSED WITH PREJUDICE.

        **F.    Count X - Mistake**

        Count X alleges that, if the actions of Defendants

and/or their predecessors in interest were not fraudulent

misrepresentations or omissions, "then the underlying transaction

was entered into based upon mutual mistake . . . ."  [Complaint

at ¶ 119.]  The Hawai`i Supreme Court has adopted § 152 of the

Restatement (Second) of Contracts as the proper test to determine

whether rescission of a contract is warranted based on mutual

mistake.  Thompson v. AIG Hawaii Ins. Co., Inc., 111 Hawai`i 413,

424, 142 P.3d 277, 288 (2006) (citing AIG Hawai`i Ins. Co. v.

Bateman, 82 Hawai`i 453, 457-58, 923 P.2d 395, 399-400 (1996)).

Plaintiffs have failed to sufficiently plead a claim for rescission based on mutual mistake pursuant to § 152. It would, however, arguably be possible for Plaintiffs to cure the defects in this claim by amendment.

The PNC Defendants' Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count X, which is DISMISSED WITHOUT PREJUDICE.

### G.   Count XI - Unconscionability

Count XI alleges that the terms and conditions of the Note and Mortgage were unconscionable because Plaintiffs "placed their trust and confidence in Defendants and/or their predecessors in interest to make proper and timely disclosures, and properly qualify them for the loan, provide loan terms that were in accord with economic conditions existing at the time, among other things."  [Complaint at ¶ 121.]  In addition, Plaintiffs allege that they did not understand the terms of loan and that Defendants, who had superior bargaining power over Plaintiffs, did not inform them of the true terms of the loan. [Id. at ¶ 122.]

Unconscionability is generally a defense in a contract action, not an affirmative claim for relief.  Phillips, 2011 WL 240813, at *12 (citations omitted).  "To the extent unconscionability can be addressed affirmatively as part of a different-that is, independent-cause of action, such a claim is

asserted to prevent the enforcement of a contract whose *terms* are unconscionable." Id. (emphasis in original) (citation and internal quotation marks omitted).  Dismissal of an unconscionability "claim" is proper where the claim only challenges the defendant's general conduct and does not identify any specific contractual term as unconscionable.  Id.

In the present case, Plaintiffs have not alleged that any specific term of the Note or Mortgage was unconscionable, and they have therefore failed to allege a plausible claim for unconscionability.  It would, however, arguably be possible for Plaintiffs to cure the defects in this claim by amendment.

The PNC Defendants' Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count XI which is DISMISSED WITHOUT PREJUDICE.

H.    **Count XIV - Recoupment**

Count XIV simply states that Plaintiffs are entitled to "equitable recoupment" because of the wrongful acts and/or omissions by Defendants and/or their predecessors in interest. [Complaint at ¶ 144.]  To the extent that Count XIV is based on TILA, recoupment is only available under TILA as a "defense" in "an action to collect a debt", 15 U.S.C. § 1640(e), and a non-judicial foreclosure is not "an action to collect a debt". Rey v. Countrywide Home Loans, Inc., Civil No. 11-00142 JMS/KSC, 2011 WL 2160679, at *13 (D. Hawai`i June 1, 2011).  To the extent

that Count XIV is based on equitable recoupment, that is a defense, not an affirmative claim for relief. Id. (citing City of Saint Paul, Alaska v. Evans, 344 F.3d 1029, 1034 (9th Cir. 2003) ("[E]quitable recoupment has been allowed by state courts as well, but it has always been recognized as a defense, not a claim.")). Thus, no amendment can cure the defect in Plaintiffs' recoupment "claim".

The PNC Defendants' Motion is therefore GRANTED as to Count XIV, which is DISMISSED WITH PREJUDICE.

I. **Count XVI - Violation of Chapter 667**

Count XVI alleges that the foreclosure on the Property was invalid because the PNC Defendants committed various violations of Haw. Rev. Stat. Chapter 667, including that they were not represented in the foreclosure by an attorney licensed to practice, and physically located, in Hawai`i. [Complaint at ¶¶ 151-53.] Haw Rev. Stat. § 667-5 sets forth procedural and notice requirements for foreclosure under power of sale. The Property, however, is registered in the Land Court and a new certificate of title has already been issued following the foreclosure sale. Thus, even assuming, *arguendo*, that Plaintiffs had valid defenses to the propriety of the non-judicial foreclosure sale, the defenses are time-barred because Plaintiffs failed to raise them before the new certificate of title was issued. See 143 Nenue Holdings, LLC v. Bonds, No. 28505, 2010 WL

2126481, at *2 (Hawai`i Ct. App. May 27, 2010) (citing Haw. Rev.

Stat. § 501-118; <u>Aames Funding Corp. v. Mores</u>, 107 Hawai`i 95,

110 P.3d 1042 (2005)), <u>cert. rejected by</u>, 2010 WL 4227723

(Hawai`i Oct 26, 2010), <u>cert. denied by</u>, 2011 WL 289986 (U.S.

May 2, 2011).  No amendment can cure the defect in this claim.

        The PNC Defendants' Motion is therefore GRANTED as to

Count XVI, which is DISMISSED WITH PREJUDICE.

## III. <u>Counts VI, XII, XIII, XV, XVII, XVIII, and IXX</u>

        The Court now turns to the claims for which Plaintiffs

have raised substantive arguments in opposition to the Motion.

### A.    <u>Count VI - Unjust Enrichment</u>

        Count VI alleges that:

> Defendants and/or their predecessors in interest
> have an implied contract with Plaintiffs to ensure
> that the Plaintiffs understood all fees which
> would be paid to the defendants to obtain credit
> on Plaintiffs' behalf, and to not charge any fees
> which are not related to the settlement of the
> loan and without full disclosure to Plaintiffs.

[Complaint at ¶ 91.]  Plaintiffs allege that Defendants and/or

their predecessors and interest were unjustly enriched by

"charging a higher interest rate, fees, rebates, kickbacks,

profits and gains from any resale of mortgages and notes using

Plaintiffs (sic) identities, credit scores and reputation without

consent, right, justification or excuse as part of an illegal

enterprise scheme."  [<u>Id.</u> at ¶ 92.]  Plaintiffs also allege that

Defendants and/or their predecessors and interest were unjustly

enriched by payments from various third parties "including but
not limited to investors, insurers, other borrowers, the United
States Department of the Treasury, United States federal reserve,
and others." [Id. at ¶ 94.]

This district court has recently recognized:

> To prevail on an unjust enrichment claim, a
> plaintiff must show that: 1) it has conferred a
> benefit upon the defendant, and 2) that the
> retention of the benefit was unjust. Wadsworth v.
> KSL Grant (sic) Wailea Resort, Inc., --- F. Supp.
> 2d ----, No. 08-00527, 2010 WL 5146521, at *11 (D.
> Haw. December 10, 2010).
> As a general rule, "[a]n action for unjust
> enrichment cannot lie in the face of an express
> contract." Porter v. Hu, 169 P.3d 994 (Haw. App.
> 2007); see also Goodwin v. Executive Trustee
> Servs., LLC, 680 F. Supp. 2d 1244, 1255 (D. Nev.
> 2010) ("An action 'based on a theory of unjust
> enrichment is not available when there is an
> express, written contract, because no agreement
> can be implied when there is an express
> agreement.'" (quoting Leasepartners Corp. v.
> Robert L. Brooks Trust Dated November 12, 1975,
> 942 P.2d 182, 187 (Nev. 1997))); MacDonald v.
> Hayner, 715 P.2d 519, 522 (Wash. App. 1986) ("A
> party to a valid express contract is bound by the
> provisions of that contract, and may not disregard
> the same and bring an action on an implied
> contract relating to the same matter, in
> contravention of the express contract.")  Here
> both the Note and the Mortgage were express
> agreements that Plaintiffs executed in connection
> with their loan which govern the parties (sic)
> rights and obligations.  Plaintiffs cannot,
> therefore, pursue an unjust enrichment claim.

Velasco v. Sec. Nat'l Mortg. Co., CV. No. 10-00239 DAE-KSC, 2011
WL 2117008, at *11 (D. Hawai`i May 24, 2011) (alterations in
original) (footnote omitted).

Similarly, in the present case, Plaintiffs' Note and

Mortgage are express contracts that preclude an unjust enrichment claim.  Plaintiffs have therefore failed to allege a plausible unjust enrichment claim, and no amendment can cure the defects in this claim.  The PNC Defendants' Motion is GRANTED as to Count VI, which is DISMISSED WITH PREJUDICE.

**B.    Count XII - UDAP**

Plaintiffs allege that they are consumers as defined in Haw. Rev. Stat. § 480-1 and that Defendants engaged in various acts or practices that violated Haw. Rev. Stat. §§ 480-2(a) and/or 481A-3.  Plaintiffs' allegations focus primarily on their claim that Defendants induced them to accept a loan Defendants knew they could not afford.  Further, Plaintiffs allege that Defendants' TILA violations also constitute UDAP violations. [Complaint at ¶¶ 125, 129-30.]

First, the Court notes that, while TILA does not preempt § 480-2 claims in general, TILA does preempt UDAP claims that are based on alleged TILA violations.  <u>Kajitani v. Downey Sav. & Loan Ass'n, F.A.</u>, 647 F. Supp. 2d 1208, 1220 (D. Hawai`i 2008).  Thus, the portion of Plaintiffs' UDAP claim based on alleged TILA violations fails to state a plausible UDAP claim, and Plaintiffs cannot cure this defect through amendment.  This portion of Count XII must be DISMISSED WITH PREJUDICE.  The Court now turns to the remaining portion of Plaintiffs' UDAP claim.

Section 480-2(a) states: "Unfair methods of competition

42

and unfair or deceptive acts or practices in the conduct of any

trade or commerce are unlawful." Section 481A-3(a) sets forth

various forms of deceptive trade practices. This district court,

however, has recognized that

> "lenders generally owe no duty to a borrower 'not
> to place borrowers in a loan even where there was
> a foreseeable risk borrowers would be unable to
> repay.'" <u>McCarty v. GCP Mgmt., LLC</u>, 2010 WL
> 4812763, at *6 (D. Haw. Nov. 17, 2010) (quoting
> <u>Champlaie v. BAC Home Loans Servicing, LP</u>, 706 F.
> Supp. 2d 1029, 1061 (E.D. Cal. 2009)). <u>See also</u>
> <u>Sheets v. DHI Mortg. Co.</u>, 2009 WL 2171085, at *4
> (E.D. Cal. July 20, 2009) (reasoning that no duty
> exists "for a lender 'to determine the borrower's
> ability to repay the loan. . . . The lender's
> efforts to determine the creditworthiness and
> ability to repay by a borrower are for the
> lender's protection, not the borrower's.'"
> (quoting <u>Renteria v. United States</u>, 452 F. Supp.
> 2d 910, 922-23 (D. Ariz. 2006)).
>
> "[A]s a general rule, a financial institution
> owes no duty of care to a borrower when the
> institution's involvement in the loan transaction
> does not exceed the scope of its conventional role
> as a mere lender of money." <u>Nymark v. Heart Fed.</u>
> <u>Sav. & Loan Ass'n</u>, 283 Cal. Rptr. 53, 56 (Cal. Ct.
> App. 1991). Nothing in the Complaint indicates
> that any Defendant "exceed[ed] the scope of [a]
> conventional role as a mere lender of money." The
> claims fail on that basis alone. The court,
> however, cannot conclude at this time that further
> amendment is futile and allows the Casinos an
> opportunity to amend Count VII to attempt to state
> a section 480-2 claim.

<u>Casino v. Bank of Am.</u>, Civil No. 10-00728 SOM/BMK, 2011 WL

1704100, at *12-13 (D. Hawai`i May 4, 2011) (alterations in

original).

For the same reasons, this Court CONCLUDES that

Plaintiffs have not alleged a plausible UDAP claim against the

PNC Defendants.  It would, however, arguably be possible for Plaintiffs to cure the defects in this claim by amendment, provided that, to the extent Plaintiffs' UDAP claim is premised upon alleged fraud, Plaintiffs satisfy the pleading requirements of Fed. R. Civ. P. 9(b).  The PNC Defendants' Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count XII.  The portion of Count XII based on alleged TILA violations is DISMISSED WITH PREJUDICE, and the remainder of Count XII is DISMISSED WITHOUT PREJUDICE.

### C.    Count XIII - Failure to Act in Good Faith

Count XIII alleges that "Defendants and/or their predecessors in interest failed to deal with Plaintiffs in good faith and in a fair manner by making various misrepresentations of material fact and/or omissions of material fact, not making the mandatory federal law disclosures, not providing loan relief and/or modification of loan terms . . . ."  [Complaint at ¶ 139.]

This district court has characterized similar claims as attempts to allege claims for the tort of bad faith.  See, e.g., Phillips v. Bank of Am., Civil No. 10-00551 JMS-KSC, 2011 WL 240813, at *5 (D. Hawai`i Jan. 21, 2011) (citing Best Place v. Penn Am. Ins. Co., 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of bad faith for breach of implied covenant of good faith and fair dealing in an insurance contract)).

> "In Best Place, the Hawaii Supreme Court
> noted that although Hawaii law imposes a duty of

44

good faith and fair dealing in all contracts,
whether a breach of this duty will give rise to a
bad faith tort cause of action depends on the
duties inherent in a particular type of contract."
Jou v. Nat'l Interstate Ins. Co. of Haw., 114 Haw.
122, 129, 157 P.3d 561, 568 (Haw. App. 2007)
(citing Best Place, 82 Haw. at 129, 920 P.2d at
334). "The court concluded that special
characteristics distinguished insurance contracts
from other contracts and justified the recognition
of a bad faith tort cause of action for the
insured in the context of first- and third-party
insurance contracts." Id. (citing Best Place, 82
Haw. at 131-32, 920 P.2d at 345-46). Indeed, "the
Hawaii Supreme Court emphasized that the tort of
bad faith, as adopted in Best Place, requires a
contractual relationship between an insurer and an
insured." Id. (citing Simmons v. Puu, 105 Haw.
112, 120, 94 P.3d 667, 675 (2004)).

Moreover, although commercial contracts for
"sale of goods" also contain an obligation of good
faith in their performance and enforcement, this
obligation does not create an independent cause of
action. See Stoebner Motors, Inc. v. Automobili
Lamborghini S.P.A., 459 F. Supp. 2d 1028, 1037-38
(D. Haw. 2006). And Hawaii courts have noted that
"[o]ther jurisdictions recognizing the tort of bad
faith . . . limit such claims to the insurance
context or situations involving special
relationships characterized by elements of
fiduciary responsibility, public interest, and
adhesion." Id. at 1037 (quoting Francis v. Lee
Enters., 89 Haw. 234, 238, 971 P.2d 707, 711
(1999)). It is thus unlikely that Plaintiffs
could recover for bad faith as alleged in Count
III.

Importantly, even assuming a bad faith tort
exists outside the insurance context, it is
well-settled that "[a] party cannot breach the
covenant of good faith and fair dealing before a
contract is formed." Contreras v. Master Fin.,
Inc., 2011 WL 32513, at *3 (D. Nev. Jan. 4, 2011)
(citing Indep. Order of Foresters v. Donald,
Lufkin & Jenrette, Inc., 157 F.3d 933, 941 (2d
Cir. 1998) ("[A]n implied covenant relates only to
the performance under an extant contract, and not
to any pre-contract conduct.")). Hawaii follows
this distinction. See Young v. Allstate Ins. Co.,

119 Haw. 403, 427, 198 P.3d 666, 690 (2008)
(indicating the covenant of good faith does not
extend to activities occurring before consummation
of an insurance contract).

Thus, because all of Count III's allegations
concern pre-contract activities (failing to
disclosure terms, failing to conduct proper
underwriting, making an improper loan to
Plaintiffs), Defendants cannot be liable for bad
faith.  See id.; see also Larson v. Homecomings
Fin., LLC, 680 F. Supp. 2d 1230, 1237 (D. Nev.
2009) ("Because Plaintiffs' claim revolves
entirely around alleged misrepresentations made
before the [mortgage loan] contract was entered
into, [the bad faith claim] fails as a matter of
law.").

And, even if Plaintiffs are attempting to
assert bad faith in the performance of a
contractual right to foreclose, "a court should
not conclude that a foreclosure conducted in
accordance with the terms of a deed of trust
constitutes a breach of the implied covenant of
good faith and fair dealing." Davenport v. Litton
Loan Servicing, LP, 725 F. Supp. 2d 862, 884 (N.D.
Cal. 2010) (citation omitted).  "The covenant [of
good faith] does not 'impose any affirmative duty
of moderation in the enforcement of legal
rights.'"  Id. (quoting Price v. Wells Fargo Bank,
213 Cal. App. 3d 465, 479-80, 261 Cal. Rptr. 735,
742 (1989)).

Id. at *5-6 (alterations in original).

In the present case, Plaintiffs' allegations relate to

pre-contract activities and the denial of loan modification in

connection with the exercise of the contractual right to

foreclosure.  [Complaint at ¶ 139.]  Thus, for the same reasons

set forth in Phillips, this Court CONCLUDES that Plaintiffs have

not, and cannot by any amendment, allege a plausible claim

against the PNC Defendants for failure to act in good faith.  The

PNC Defendants' Motion is therefore GRANTED as to Count XIII,

46

which is DISMISSED WITH PREJUDICE.

> **D.   Count XV - IIED/NIED**

Count XV alleges that Defendants' actions, including, *inter alia*, misleading Plaintiffs, providing Plaintiffs a loan they could not afford, and leading Plaintiffs to believe that they would qualify for refinancing or loan modification, constituted IIED and/or NIED. [Complaint at ¶¶ 146-48.]

At the outset, the Court must address the PNC Defendants' argument that Plaintiffs' IIED and NIED claims are barred by the statute of limitations in Haw. Rev. Stat. § 657-7, which states, in pertinent part, that: "Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after . . . ."

Plaintiffs' IIED and NIED claims are based upon both the loan origination and the denial of loan modification. First, Plaintiffs filed this action on October 12, 2010, and Plaintiffs' attempts to modify their loan occurred within two years prior to that date. Second, although Plaintiffs' entered into the loan in May 2007, more than two years prior to the filing of the Complaint, the "discovery rule" applies to the statute of limitations for IIED and NIED claims. United States E.E.O.C. v. NCL Am., 535 F. Supp. 2d 1149, 1169-70 (D. Hawai`i 2008). In that case, the district court stated:

> [U]nder the discovery rule, a cause of action
> accrues when the plaintiff knew or should have
> known of the causal connection between the
> defendant's action and the damage done.  While it
> is clear that [the defendant's] action in
> terminating the policy was known by [the
> p]laintffs (sic) in 1992, it is still unclear when
> [the p]laintiffs actually suffered emotional
> distress, and when they connected their distress
> with [the defendant's] actions.

Id. at 1170 (alterations in original) (citation omitted).

Similarly, in the present case, it is unclear when Plaintiffs

suffered their emotional distress and when they connected it with

the PNC Defendants' actions.  Thus, at this time, the Court

cannot find that Plaintiffs' IIED and NIED claims are time-

barred.  The Court now turns to whether Plaintiffs have asserted

plausible IIED and NIED claims.

### 1.  **IIED**

Under Hawai`i law, there are four elements of an IIED

claim.  First, the plaintiff must prove that the conduct was

either intentional or reckless.  Second, the conduct in question

must have been "outrageous."  Next, the plaintiff must establish

causation, and finally, there must be evidence that the plaintiff

suffered extreme emotional distress.  See Young v. Allstate Ins.

Co., 119 Hawai`i 403, 425, 198 P.3d 666, 688 (2008).  A

determination of "outrageous" conduct is fact specific.  Hawai`i

courts have defined outrageous conduct as conduct "'without just

cause or excuse and beyond all bounds of decency.'"  Chin v.

Carpenter-Asui, No. 28654, 2010 WL 2543613, at *4 (Hawai`i Ct.

48

App. June 24, 2010) (quoting <u>Lee v. Aiu</u>, 85 Hawai`i 19, 34 n.12,

936 P.2d 655, 670 n.12 (1997) (some citations omitted)).  If a

plaintiff fails to prove that the alleged conduct rose to the

level of "outrageous," dismissal is proper.  <u>See</u> <u>Farmer ex rel.</u>

<u>Keomalu v. Hickam Fed. Credit Union</u>, No. 27868, 2010 WL 466007,

at *14 (Hawai`i Ct. App. Feb. 2, 2010) (citing <u>Shoppe v. Gucci</u>

<u>America Inc.</u>, 94 Hawai`i 368, 387, 14 P.3d 1049, 1068 (2000)),

<u>cert. denied</u>, 2010 WL 2625261 (Hawai`i June 29, 2010).

> "Default and foreclosure proceedings generally do
> not rise to the level of extreme and outrageous
> conduct.  Denying a loan modification which might
> result in foreclosure is no more 'outrageous in
> character' than actually foreclosing." <u>Erickson</u>
> <u>v. Long Beach Mortg. Co.</u>, No. 10-1423 MJP, 2011 WL
> 830727, at *7 (W.D. Wash. Mar. 2, 2011) (citation
> omitted) (dismissing IIED claim on summary
> judgment).  <u>But cf.</u> <u>Bass v. Ameriquest Mortg. Co.</u>,
> Civ. No. 09-00476 JMS-BMK, 2010 WL 3025167, at
> *10-11 (D. Haw. Aug. 3, 2010) (denying summary
> judgment as to an IIED claim where the plaintiff
> asserted that the defendant "forged her signature
> on the 2006 loans, refused to honor [her] right of
> cancellation of the loans when she discovered the
> forgeries, and commenced foreclosure proceedings
> against [her] when she failed to make her loan
> payments").

<u>Uy v. Wells Fargo Bank, N.A.</u>, Civ. No. 10-00204 ACK-RLP, 2011 WL

1235590, at *14 (D. Hawai`i Mar. 28, 2011) (alterations in

original).

This Court CONCLUDES that Count XV fails to allege a

plausible claim for IIED because Plaintiffs have not alleged any

actions or omissions by the PNC Defendants that rose to the level

of outrageous conduct necessary for an IIED claim.  It would,

however, arguably be possible for Plaintiffs to cure the defects in this claim by amendment. The PNC Defendants' Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count XV, insofar as Plaintiffs' IIED claim is DISMISSED WITHOUT PREJUDICE.

### 2. <u>NIED</u>

> The elements of a claim for negligent infliction of emotional distress ("NIED") are: (1) that the defendant engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3) that such negligent conduct of the defendant was a legal cause of the serious emotional distress. <u>Tran v. State Farm Mut. Automobile Ins. Co.</u>, 999 F. Supp. 1369, 1375 (D. Haw. 1998). A cognizable claim for NIED under Hawaii law also "requires physical injury to either a person or property," <u>see</u> <u>Calleon v. Miyagi</u>, 76 Haw. 310, 320, 876 F.2d 1278 (1994), or a mental illness, <u>see</u> Haw. Rev. Stat. § 663-8.9.

<u>Dowkin v. Honolulu Police Dep't</u>, Civ. No. 10-00087 SOM-LEK, 2010 WL 4961135, at *9 (D. Hawai`i Nov. 30, 2010). Duty and breach of duty are essential elements of a negligence claim under Hawai`i law. <u>See</u> <u>Cho v. Hawai`i</u>, 115 Hawai`i 373, 379 n.11, 168 P.3d 17, 23 n.11 (2007) ("It is well-established that, in order for a plaintiff to prevail on a negligence claim, the plaintiff is required to prove all four of the necessary elements of negligence: (1) duty; (2) breach of duty; (3) causation; and (4) damages.").

Courts generally hold that lenders do not owe their borrowers a duty of care sounding in negligence. <u>McCarty v. GCP Mgmt., LLC</u>, 2010 WL 4812763, at *6 (D. Haw. Nov. 17, 2010)

(citing <u>Champlaie v. BAC Home Loans Servicing, LP,</u> 706 F. Supp.
2d 1029, 1061 (E.D. Cal. 2009) ("[A]s a matter of law, [a] lender
[does] not owe a duty in negligence not to place borrowers in a
loan even where there was a foreseeable risk borrowers would be
unable to repay.") (some citations omitted)). Plaintiffs only
dealt with the PNC Defendants in a borrower and lender capacity.
This Court therefore FINDS that Plaintiffs have not, and cannot,
allege that the PNC Defendants owed them a duty of care sounding
in negligence. Plaintiffs' Complaint fails to allege a plausible
NIED claim, and they cannot cure the defects in that claim by any
amendment. The PNC Defendants' Motion is therefore GRANTED as to
Count XV insofar as Plaintiffs' NIED claim is DISMISSED WITH
PREJUDICE.

    **E.**    **Count XVII - FDCPA**

      Plaintiffs allege that Defendants and/or their
predecessors in interest violated the FDCPA by failing to give
the notices required by the FDCPA in connection with collecting a
debt. Plaintiffs assert that this invalidates the foreclosure
action. [Complaint at ¶¶ 156-57.]

      In a related context of a FDCPA claim against a
mortgage broker, this district court has stated:

> The FDCPA prohibits various collection
> practices by "debt collectors" to, among other
> things, "eliminate abusive debt collection
> practices." <u>See</u> 15 U.S.C. § 1692(e) (describing
> the purpose of the FDCPA). The FDCPA defines a
> "debt collector" as:

any person who uses any instrumentality of
interstate commerce or the mails in any
business the principal purpose of which is
the collection of any debts, or who regularly
collects or attempts to collect, directly or
indirectly, debts owed or due or asserted to
be owed or due another.  Notwithstanding the
exclusion provided by clause (F) of the last
sentence of this paragraph, the term includes
any creditor who, in the process of
collecting his own debts, uses any name other
than his own which would indicate that a
third person is collecting or attempting to
collect such debts.  For the purpose of
section 1692f(6) of this title, such term
also includes any person who uses any
instrumentality of interstate commerce or the
mails in any business the principal purpose
of which is the enforcement of security
interests. . . .

15 U.S.C. § 1692a(6).  To be liable for a
violation of the FDCPA, the defendant must, as a
threshold requirement, be a "debt collector"
within the meaning of the FDCPA.  <u>Heintz v.
Jenkins</u>, 514 U.S. 291, 294 (1995).

. . . A mortgage broker does not fall within
the FDCPA's definition of "debt collector."  <u>See
Walker v. Equity 1 Lenders</u>, 2010 WL 234942, at *5
(S.D. Cal. Jan. 12, 2010) (citing <u>Perry v. Stewart
Title Co.</u>, 756 F.2d 1197, 1208 (5th Cir. 1985)
("The legislative history of section 1692a(6)
indicates conclusively that a debt collector does
not include the consumer's creditors, a mortgage
servicing company, or an assignee of a debt, as
long as the debt was not in default at the time it
was assigned."); <u>Maguire v. Citicorp. Retail
Svcs.</u>, 147 F.3d 232, 236 (2d Cir. 1998) (stating
that the FDCPA does not apply to creditors)); <u>see
also</u> <u>Green v. Alliance Title</u>, 2010 WL 3505072, at
*18 (E.D. Cal. Sept. 2, 2010) ("The definition [of
debt collector] explicitly excludes creditors as
well as loan originators or assignees who obtained
the right to collect on loan when it was not in
default.").

<u>Sakugawa v. IndyMac Bank, F.S.B.</u>, Civil No. 10-00504 JMS/LEK,

2010 WL 4909574, *4-5 (D. Hawai`i Nov. 24, 2010) (some

alterations in original) (footnote omitted).

The PNC Defendants have pointed to documents showing
that they are Plaintiffs' creditors because they acquired
Plaintiffs' Note and Mortgage by merging with NCB, not through
assignment. [RJN, Exhs. C-E.] Further, there is no indication
that the PNC Defendants used misleading names in trying to
collect debts associated with Plaintiffs' Note and Mortgage.
Although not stated in Count XVII, Plaintiffs' Memorandum in
Opposition asserts that the PNC Defendants acquired the Note and
Mortgage by assignment from E*Trade after the Mortgage was
already in default. [Mem. in Opp. at 8 (citing Exh. 4).] The
Court therefore finds that the Complaint as written fails to
allege a plausible FDCPA claim against the PNC Defendants, but
that it is possible for Plaintiffs to cure the defects in this
claim by amendment.

The PNC Defendants' Motion is therefore GRANTED IN PART
AND DENIED IN PART as to Count XVII which is DISMISSED WITHOUT
PREJUDICE.

## F. __Count XVIII - Violations of the Sherman Antitrust Act__

Count XVIII alleges that "Defendant", without
specifying which one, violated the Sherman Antitrust Act,
15 U.S.C. § 2. [Complaint at ¶ 160.] Plaintiffs make general
allegations that Defendant/Defendants engaged in anticompetitive
conduct and attempted to monopolize the mortgage lending and

servicing market.  [Id. at ¶ 164.]

    This district court has recently stated that:

    "To establish a Sherman Act § 2 violation for attempted monopolization, a private plaintiff seeking damages must demonstrate four elements: (1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving 'monopoly power;' and (4) causal antitrust injury." Rebel Oil Co., Inc. v. Atl. Richfield Co., 51 F.3d 1421, 1432–33 (9th Cir. 1995) (citation omitted).

    "In adopting the federal antitrust laws, Congress allowed private parties to bring suit" with Section 4 of the Clayton Act, 15 U.S.C. § 15. Pool Water Prods. v. Olin Corp., 258 F.3d 1024, 1034 (9th Cir. 2001).  But, "in addition to the traditional limitations upon standing imposed by the Constitution, Congress imposed additional limitations upon those who can recover damages under the antitrust laws." Id. (citations omitted).  "These limitations are sometimes referred to as the antitrust standing requirements." Id.

    The factors relevant to antitrust standing are summarized as follows: "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages." Knevelbaard Dairies v. Kraft Foods, Inc., 232 F.3d 979, 987 (9th Cir. 2000) (quoting Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal., 190 F.3d 1051, 1054–55 (9th Cir. 1999)).  "The most important limitation is that the private party must prove the existence of 'antitrust injury.'" Pool Water Prods., 258 F.3d at 1034 (citations and internal quotations omitted) (emphasis in original).

        To show antitrust injury, a plaintiff must prove that his loss flows from an *anticompetitive* aspect or effect of the defendant's behavior, since it is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt

> competition.  If the injury flows from
> aspects of the defendant's conduct that are
> beneficial or neutral to competition, there
> is no antitrust injury, even if the
> defendant's conduct is illegal *per se*.
>
> Id. (quoting Rebel Oil, 51 F.3d at 1433) (emphasis
> in original).  Another requirement is that "the
> injured party be a participant in the same market
> as the alleged malefactors," *i.e.*, "the party
> alleging the injury must be either a consumer of
> the alleged violator's goods or services or a
> competitor of the alleged violator in the
> restrained market."  Glen Holly Entm't, Inc. v.
> Tektronix Inc., 343 F.3d 1000, 1008 (9th Cir.
> 2003) (citation and quotation signals omitted).

Phillips v. Bank of Am., N.A., Civil No. 10-00551 JMS-KSC, 2011

WL 2160583, at *5-6 (D. Hawai`i June 1, 2011).

Plaintiffs allege that "Defendants intended . . . to

control mortgage lending prices and practices and/or to destroy

competition[,]" [Complaint at ¶ 161,] and that they "inflated the

real estate market in an effort to create and sell subprime

mortgages" by selling "over-leveraged, highly inflated loans" to

unsophisticated borrowers like Plaintiffs and by selling "these

fraudulent securities to investors and participat[ing] in a

ratings scheme to fraudulently rate these securities as safer

than they truly were."  [Complaint at ¶ 162.]  Plaintiffs,

however, do not allege facts to support their allegation that

Defendants intended to control mortgage lending prices and/or to

destroy competition, nor have Plaintiffs alleged how the alleged

inflation of the real estate market, the alleged sale of inflated

loans, and the alleged over-rating of securities affected

Defendants' competition with other lenders.  Thus, Plaintiffs have failed to allege that they were injured by the anticompetitive aspect of Defendants' behavior.  The Court also notes that Plaintiffs make no allegations identifying the PNC Defendants' alleged anticompetitive behavior.  As in <u>Phillips</u>, Plaintiffs have failed to allege facts establishing that the PNC Defendants' conduct "affected *competition*, which is 'the critical question for determining whether there is antitrust injury.'" 2011 WL 2160583, at *6 (emphasis in <u>Phillips</u>) (quoting <u>Pool Water Prods.</u>, 258 F.3d at 1036).  Plaintiffs have therefore failed to plead a plausible claim for violation of the Sherman Act.  It would, however, arguably be possible for Plaintiffs to cure the defects in this claim by amendment.

The PNC Defendants' Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count XVIII, which is DISMISSED WITHOUT PREJUDICE.

## G.   <u>Count IXX - Hawaii Antitrust/Antimonopoly Acts</u>

Count IXX alleges that Defendants violated the Hawaii Antitrust Act, Haw. Rev. Stat. § 480-13, and the Hawaii Monopolization Act, Haw. Rev. Stat. § 480-9.  Plaintiffs make general allegations that Defendant/Defendants engaged in anticompetitive conduct and attempted to monopolize the mortgage lending and servicing market.  [Complaint at ¶¶ 165-66.]

This district court has recently recognized that:

The close relationship between federal
antitrust law and Hawaii antitrust law has long
been established.  See, e.g., Robert's Hawaii Sch.
Bus v. Laupahoehoe Transp. Co., Inc., 982 P.2d
853, 881 n.29 (Haw. 1999) (noting the similarities
between Section 2 of the Sherman Antitrust Act and
Haw. Rev. Stat. § 480-9.)  Indeed, the
"[l]egislative history of Hawaii's antitrust law
clearly indicates that the state laws are to be
interpreted and construed in harmony with
analogous federal antitrust laws."  Island Tobacco
Co., Ltd. v. R.J. Reynolds Indus., Inc., 513 F.
Supp. 726, 738 (D. Haw. 1981).  Similar to federal
law, therefore, Hawaii courts require plaintiffs
in antitrust proceedings to plead the "nature of
the competition" to "ensure that the injury
results from a competition-reducing aspect of the
defendant's behavior."  Davis v. Four Seasons
Hotel Ltd., 228 P.3d 303, 325 (Haw. 2010) (citing
and relying on federal law).

Velasco v. Sec. Nat'l Mortg. Co., CV. No. 10-00239 DAE-KSC,  2011

WL 2117008, at *6 (D. Hawai`i May 24, 2011) (alterations in

original).  Thus, for the reasons set forth *supra* Section III.F.,

this Court also finds that Count IXX fails to state a claim

because Plaintiffs have not alleged any anticompetitive conduct.

It would, however, arguably be possible for Plaintiffs to cure

the defects in this claim by amendment.

The PNC Defendants' Motion is therefore GRANTED IN PART

AND DENIED IN PART as to Count IXX, which is DISMISSED WITHOUT

PREJUDICE.

## IV.  Derivative Claims

Finally, the Court turns to Plaintiffs' claims that are

derivative of other substantive claims.

## A.  Count VII - Civil Conspiracy

Plaintiffs allege that Defendants conspired to commit one or more acts in a conspiracy to defraud Plaintiffs. [Complaint at ¶ 97.] Hawai`i does not recognize an independent cause of action for "civil conspiracy". Such a theory of potential liability is derivative of other wrongs. See, e.g., Chung v. McCabe Hamilton & Renny Co., 109 Hawai`i 520, 530, 128 P.3d 833, 843 (2006); Weinberg v. Mauch, 78 Hawai`i 40, 49, 890 P.2d 277, 286 (1995). Insofar as this Court has dismissed all of Plaintiffs' other claims, this Court must also dismiss the derivative conspiracy claim. It is, however, arguably possible for Plaintiffs to cure the defects in this claim by amendment, if Plaintiffs can allege plausible claims underlying the alleged conspiracy. The Court also notes that, to the extent the conspiracy claim is premised on alleged fraud, Plaintiffs must meet the heightened pleading requirements of Rule 9(b) in alleging a conspiracy. See Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007) ("Rule 9(b) imposes heightened pleading requirements where the object of the conspiracy is fraudulent." (citation and internal quotation marks omitted)).

The PNC Defendants' Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count VII, which is DISMISSED WITHOUT PREJUDICE.

**B.** **Count VIII - Claim to Quiet Title**

Count VIII asserts that Plaintiffs are still the rightful title owners of the Property, and Count VIII seeks a judgment requiring Defendants to transfer or release any interest or encumbrance that they have on the Property to Plaintiffs. [Complaint at ¶¶ 103-08.] This district court has construed similar allegations as attempts to assert a claim pursuant to Haw. Rev. Stat. § 669-1(a). <u>See, e.g.</u>, <u>Phillips</u>, 2011 WL 240813, at *13. Section 669-1(a) states: "Action may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."

In order for mortgagors to quiet title against the mortgagee, the mortgagors must establish that they are the rightful owners of the property and they have paid, or are able to pay, the amount of their indebtedness. <u>Phillips</u>, 2011 WL 240813, at *13. Plaintiffs have arguably alleged that they are able to tender the amount of their indebtedness. [Complaint at ¶ 63.] The Court, however, has dismissed all of the substantive claims in which Plaintiffs seek to establish that they are the rightful owners of the Property. It is arguably possible for Plaintiffs to plead a plausible quiet title claim upon amendment of the Complaint. For example, even where a new certificate of title has been issued for a Land Court property, if the new

registered owner obtained the title by fraud, the prior owner may pursue all of his remedies "against the parties to the fraud, without prejudice however to the rights of any innocent holder for value of a certificate of title[.]"[5] Haw Rev. Stat. § 501-106(b). If Plaintiffs can amend their fraud-based claims against the PNC Defendants to state a plausible claim for fraud in the foreclosure process, Plaintiffs may be able to plead a basis for having their title to the Property restored.

The PNC Defendants' Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count VIII, which is DISMISSED WITHOUT PREJUDICE.

## V.   **PNC Defendants' Request for Sanctions**

In their reply and at the hearing on the Motion, the PNC Defendants' counsel requested that this Court condition Plaintiffs' filing of a First Amended Complaint upon the payment of the PNC Defendants' attorneys' fees and costs incurred through the instant Motion. At the hearing, the PNC Defendants' counsel argued that Plaintiffs' counsel did not comply with his obligations under Fed. R. Civ. P. 11 prior to filing the Complaint in the instant case. The PNC Defendants' counsel also emphasized that the instant case is only one of several cases in which Plaintiffs' counsel has filed a complaint that was largely

---

[5] The Court notes that PNC Bank became the title holder of the Property. [RJN, Exh. H.]

60

meritless.

While the Court understands defense counsel's
frustration with the extensive number of claims in this case
which were not plausible and with the filing of similar
complaints in several other cases, the Court is not inclined to
initiate the Rule 11 sanctions process on its own initiative.
See Fed. R. Civ. P. 11(c)(3).  If the PNC Defendants wish to
pursue Rule 11 sanctions against Plaintiffs' counsel, the PNC
Defendants must file the appropriate motion pursuant to Rule
11(c)(2).

The Court, however, strongly advises Plaintiffs'
counsel to use surgical precision and specificity in detailing
facts in drafting the First Amended Complaint, giving careful
consideration to the standards set forth in this order.  This
Court's findings that it was arguably possible to cure the
defects in certain claims upon amendment does not necessarily
mean that Plaintiffs must include all of those claims in the
First Amended Complaint.  In other words, while it may be
theoretically possible to save some claims by amendment, the
instant case may not have the facts necessary to support some of
those claims.  The Court notes that the proposed First Amended
Complaint that Plaintiffs attached to the Memorandum in
Opposition only contained five claims: UDAP, FDCPA violations,
violations of federal and state antitrust laws, unjust

enrichment, and IIED/NIED. [Mem. in Opp., Exh. 7.] The Court reminds Plaintiffs and Plaintiffs' counsel that they must present plausible claims for relief and they should carefully consider whether they are able to allege a plausible claim for relief before including a count in the First Amended Complaint and possibly running afoul of Rule 11.

The Court shares the PNC Defendants' concern that the proposed First Amended Complaint, which contains fourteen fewer claims than the original Complaint did, is twelve pages longer than the original Complaint. [Reply at 15.] The Court reminds Plaintiffs and Plaintiffs' counsel that a complaint must contain, *inter alia*, "a **short and plain** statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2) (emphasis added).

Finally, insofar as Plaintiffs have requested leave to add additional claims when they file their amended complaint, Plaintiffs' request is denied. The Court only grants Plaintiffs leave to amend their Complaint to address the defects in the claims addressed in this Order. If Plaintiffs wish to add additional claims, Plaintiffs must comply with the requirements of Fed. R. Civ. P. 15.

## CONCLUSION

On the basis of the foregoing, the PNC Defendants' Motion to Dismiss Complaint, filed February 25, 2011, is HEREBY

GRANTED IN PART AND DENIED IN PART.  Plaintiffs' Complaint is HEREBY DISMISSED WITH PREJUDICE as to: Count I (HOEPA); Count II (RESPA); Count III (TILA); Count VI (unjust enrichment); Count IX (violation of BOC regulations); the portion of Count XII (UDAP) based on alleged TILA violations; Count XIII (failure to act in good faith); Count XIV (recoupment); the portion of Count XV alleging NIED; and Count XVI (violation of Haw. Rev. Stat. Chapter 667).

Plaintiffs' Complaint is HEREBY DISMISSED WITHOUT PREJUDICE as to: Count IV (fraudulent misrepresentation); Count V (breach of fiduciary duty); Count VII (civil conspiracy); Count VIII (quiet title); Count X (mistake); Count XI (unconscionability); all allegations in Count XII (UDAP) except the portion based on alleged TILA violations; the portion of Count XV alleging IIED; Count XVII (FDCPA); Count XVIII (violation of the Sherman Antitrust Act); and Count IXX (violations of the Hawaii Antitrust/Antimonopoly Acts).

Plaintiffs have until **July 1, 2011** to file an amended complaint in accordance with this order.  The Court CAUTIONS Plaintiffs that, if they fail to file their amended complaint by **July 1, 2011**, this Court will amend this order to dismiss all of Plaintiffs' claims with prejudice.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 20, 2011.



_/S/ Leslie E. Kobayashi_____
Leslie E. Kobayashi
United States District Judge

**EDWIN PASCUA CARAANG, ET AL. V. PNC MORTGAGE, ETC., ET AL; CIVIL NO. 10-00594 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART PNC DEFENDANTS' MOTION TO DISMISS COMPLAINT**